## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MICHAEL BRIGGS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE NORTH HIGHLAND COMPANY,<br><br>Defendant. | Case No. 1:22-cv-03640<br><br>District Judge Steve C. Jones |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Michael Briggs respectfully moves the Court for an order: (1) preliminarily approving the proposed Settlement Class; (2) approving the proposed notice plan; and (3) setting a date for a final approval hearing. This motion is based on the incorporated memorandum of law, the declarations and exhibits filed herewith, the pleadings and papers in this action, and any additional arguments of counsel. Plaintiff's counsel conferred with Defendant's counsel, and Defendant does not oppose this motion.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 2

   I.   Litigation History ................................................... 2

       A.   Factual Allegations ................................................2

       B.   The Court's Rulings ..............................................2

       C.   Settlement Negotiations .........................................3

   II.   Summary of Settlement Terms ..................................3

       A.   Proposed Settlement Class ......................................3

       B.   Settlement Benefits ..............................................4

       C.   Scope of Release ................................................4

       D.   Attorney Fees and Service Award .............................5

       E.   Notice and Claims Administration .............................5

LEGAL STANDARD ........................................................... 6

ARGUMENT ..................................................................... 6

   I.   The Court should provisionally certify the proposed settlement class. 6

       A.   All requirements of Rule 23(a) are satisfied. .................................7

           1. Rule 23(a)(1)'s numerosity requirement is satisfied. ...............7

           2. Rule 23(a)(2)'s commonality requirement is satisfied. ............ 8

           3. Rule 23(a)(3)'s typicality requirement is satisfied. .................. 9

           4. Rule 23(a)(4)'s adequacy requirement is satisfied. ................. 10

       B.   Rule 23(b)(3) is also satisfied. ....................................... 11

           1. Common questions predominate............................................. 11

           2. A class action is superior to individual adjudication. ............. 12

   II.   The Court should preliminarily approve the proposed settlement...... 14

   III.   The Court should approve the proposed notice plan. ............................... 17

CONCLUSION................................................................... 18

## INTRODUCTION

Plaintiff Michael Briggs presents to the Court a proposed class action settlement for preliminary approval. In exchange for a release of liability arising from the data security incident described in the operative complaint, Defendant The North Highland Company has agreed to establish a $650,000 *non-reversionary* common fund for the benefit of the proposed 12,446 person Settlement Class. The Settlement Fund is thus worth $52 per class member, which is exceedingly favorable when compared to other settlements like it. Courts have consistently approved data breach settlements providing class members $3 or less per person. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ($1.45 per class member is "meaningful consideration"); *In re Experian Data Breach Litig.*, 2019 U.S. Dist. LEXIS 81243, *25 (C.D. Cal. May 10, 2019) (settlement provided "a $1.47 payout per person, which compares favorably to other approved data breach settlements"); *In re Premera Blue Cross Cust. Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093, *65–67 (D. Or. July 29, 2019) (fund worth $3.02 per class member provides "significant value"); *Gaston v. Fabfitfun, Inc.*, 2021 U.S. Dist. LEXIS 147383, *18–20 & n.1 (C.D. Cal. Apr. 2, 2021) ($1.42 per class member is "substantial" relief "on par with that in other data breach settlements"). The result Plaintiff achieved in this case is remarkable in comparison. *Cf. Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, *19 (C.D. Cal. Feb. 22, 2022) ("Plaintiffs' $15 to $275 per Class Member value estimates greatly exceed the settlement value per class member in comparable data breach cases.").

Therefore, Plaintiff respectfully moves the Court for an order: (1) preliminarily approving the proposed Settlement Class; (2) approving the proposed notice plan; and (3) setting a date for a final approval hearing.

## BACKGROUND

### I.  Litigation History

#### A.  Factual Allegations

Defendant The North Highland Company is a consultancy firm. *See* First Am. Compl., ECF No. 32 at ¶¶ 1–2. Hackers gained access to North Highland's systems during a ransomware attack. *Id.* at ¶¶ 3, 11–14. Plaintiff alleges that the criminals exfiltrated a significant amount of personally identifying information ("PII") about current and former Norther Highland employees, including their names, national insurance numbers, social security numbers, tax numbers, home addresses, bank account numbers, payroll information, phone numbers, email addresses, date of birth, benefits information, background check and employment screening information, performance records, and even medical information. *Id.* at ¶ 14.

Plaintiff Michael Briggs is a former North Highland employee. He alleges that the data breach occurred as a result of North Highland's failure to exercise reasonable care. *Id.* at ¶¶ 2, 23–33, 65–67. Briggs pleaded claims for negligence, negligence per se, and breach of contract. *Id.* at ¶¶ 78–101.  North Highland denies all wrongdoing or that it failed to exercise reasonable care.

#### B.  The Court's Rulings

Defendant filed its first motion to dismiss on November 7, 2022. ECF No. 21. After the motion was briefed, the Eleventh Circuit issued a published

opinion in a data breach case. *See Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213 (11th Cir. 2023). In light of the opinion in *Ramirez*, the Court denied North Highland's motion to dismiss without prejudice, allowing Plaintiff leave to amend. ECF No. 31.

Defendant filed its second motion to dismiss on June 30, 2023. ECF No. 33. On February 9, 2024, the Court granted the motion in part, holding that Plaintiff had plausibly alleged Article III standing and stated claims for negligence and negligence per se, but dismissing Plaintiff's breach of contract claim. ECF No. 42.

### C. Settlement Negotiations

Soon after the Court's ruling on Defendant's second motion to dismiss, the parties agreed to mediate the case, setting a mediation deadline in the scheduling order. ECF No. 47; Joint Decl. of Class Counsel ¶ 8. On May 22, 2024, the parties mediated the case before Hon. Edward A. Infante (Ret.), a former Chief Magistrate Judge of the U.S. District Court for the Northern District of California. In connection with the mediation, the parties conducted informal discovery and exchanged adversarial letter briefs. Joint Decl. ¶¶ 9–14.

## II. Summary of Settlement Terms

### A. Proposed Settlement Class

The proposed Settlement Class is defined as follows:

All current and former North Highland employees and their dependents and beneficiaries residing in the United States whose Personal Information was potentially compromised in the Data Incident affecting North Highland on or about May 26, 2022 to June 6, 2022, including all such persons who received notice of the breach. Excluded from the Settlement Class is any judge presiding over the

Litigation and their first-degree relatives, judicial staff and persons who timely and validly request exclusion from the Settlement Class.

Settlement Agreement, Exhibit 1 at § 1.39 ("S.A."). There are approximately 12,446 Settlement Class Members. *Id.* § 1.40.

### B. Settlement Benefits

In return for a release of liability, Defendant has agreed to create a $650,000 non-reversionary Settlement Fund. S.A. § 1.43. The Settlement Fund will be used to pay for benefits to the Settlement Class, notice and administrative costs, and attorney's fees and expenses, and/or any Service Award awarded by the Court. *Id.* Settlement Class Members may file a claim for monetary relief from three categories: (1) Compensation for Unreimbursed Economic Losses, in an amount $5,000.00; (2) Lost Time, for up to six hours at $25 per hour for a maximum of up to $150 per person; or (3) an Alternative Cash Payment of $100.00. *Id.* § 2.5. In addition, all Settlement Class Members may enroll in two years of credit monitoring, paid for by the Settlement Fund. *Id.* § 2.6.

In addition to the monetary relief, Defendant has committed to making security enhancements. *Id.* §§ 2.9–2.10. This provides additional relief for Settlement Class Members, particularly those whose data is still in Defendant's possession.

### C. Scope of Release

All Settlement Class Members who do not opt-out will release all claims "that result from, arise out of, are based upon, or relate to the Data Incident." S.A. § 1.34; *see also id.* at § 8. This is a standard release, covering only those claims that could have been brought in this Action.

**D.  Attorney Fees and Service Award**

Settlement Class Counsel will file a motion seeking (1) reasonable Attorney Fees and Litigation Costs, in an amount not to exceed one-third of the Settlement Fund; and (2) a reasonable service award of no more than $2,500 for the Representative Plaintiff, Mr. Briggs. S.A. § 9.1. The settlement is not contingent on the Court's award of attorney fees, litigation costs, or a service award. *Id.* § 9.4. Plaintiff will submit a separate motion substantiating the reasonable of these requests.

**E.  Notice and Claims Administration**

The parties retained Simpluris, a well-known class action settlement administrator, to serve as Claims Administrator. S.A. § 1.7. Simpluris will be responsible for administering the notice and claims program. *Id.* Simpluris has estimated that notice and administration costs will total approximately $19,931. Joint Decl. ¶ 15.

The settlement calls for a robust notice program. Defendant has agreed to provide Simpluris with, to the extent available, the name, email address, and physical mailing address of each Settlement Class Member. S.A. § 4.2. Simpluris will use that information to send the Summary Notice forms to the Settlement Class Members. *Id.* at § 4.3, Exhibit B (Long Form Notice); Exhibit C (Summary Notice). Simpluris will also establish a settlement website, which will contain the notice forms, claim forms, and other information that will assist Settlement Class Members in understanding the proposed settlement. *Id.* at § 4.3, Exhibit A (Claim Form).

## LEGAL STANDARD

Class actions may only be settled on a classwide basis with court approval. Fed. R. Civ. P. 23(e). "Preliminary approval—as the parties request here—is the first step in the settlement process." *Morris v. United States Foods, Inc.*, 2021 U.S. Dist. LEXIS 131647, *18 (M.D. Fla. May 17, 2021). "At this preliminary stage, the Court must determine whether it 'will likely be able to' 1) certify the class for purposes of judgment on the proposed settlement; and 2) approve the settlement proposal under Rule 23(e)(2)." *Navarro v. Fla. Inst. of Tech., Inc.*, 2024 U.S. Dist. LEXIS 109048, *4 (M.D. Fla. June 20, 2024) (quoting Fed. R. Civ. P. 23(e)(1)(B)). If both requirements are satisfied, the Court should direct notice to the proposed class and schedule a fairness hearing. *See id.*

## ARGUMENT

## I. The Court should provisionally certify the proposed settlement class.

Before the Court may preliminarily approve the settlement, it must find that it will "likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class— *i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). In this case, the Court will be able to certify the proposed class for

6

settlement purposes under Rule 23(a) and (b)(3). North Highland agrees to certification for purposes of settlement, but reserves all rights relating to the appropriateness of class certification should the settlement not obtain preliminary or final approval.

### A. All requirements of Rule 23(a) are satisfied.

"Four elements are required for a class to be certified under Rule 23(a) of the FRCP: numerosity, commonality, typicality, and adequacy of counsel." *Hines v. Widnall*, 334 F.3d 1253, 1255-56 (11th Cir. 2003). Each element is satisfied here.

### 1. Rule 23(a)(1)'s numerosity requirement is satisfied.

Numerosity is satisfied because "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Rule 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp.*, LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (Scola, J.) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009)). The "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Id.* (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). In this case, there are approximately 12,446 Settlement Class Members, which is far too many for individual joinder. S.A. at § 1.41. Therefore, numerosity is satisfied.

7

## 2. Rule 23(a)(2)'s commonality requirement is satisfied.

Commonality is satisfied because this case presents "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member." *Sellers v. Rushmore Loan Mgmt. Servs.*, 941 F.3d 1031, 1040 (11th Cir. 2019) (quoting *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016)). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Here, the central question raised by the litigation is whether Defendant took reasonable steps to protect the personal information of class members that resided in Defendant's systems. That issue depends on the acts and omissions of Defendant, rather than facts particular to any one class member, and thus is a question common to the class. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD- 2800-TWT, 2020 WL 256132, at *11 (N.D. Ga. Mar. 17, 2020) (citing *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016)) (finding that multiple common issues regarding data breach centered on the defendant's conduct, satisfying the commonality requirement); *Hashem v. Bosley, Inc.,* 2022 U.S. Dist. LEXIS 119454, at *7 (C.D. Cal. Feb. 22, 2022) (finding commonality where "Plaintiffs maintain that there are multiple common question of law or fact—i.e., whether Defendant breached its duty to safeguard the Class's PII, whether Defendant unreasonably delayed in notifying the Class about the data breach, and

8

whether Defendant's security measures or lack thereof violated various statutory provisions."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, at *22 (N.D. Cal. July 20, 2020) (finding commonality in a data breach case, as "[i]n the case's current posture, whether Yahoo employed sufficient security measures to protect the Settlement Class Members' Personal Information from the Data Breaches lies at the heart of every claim."); *Sung v. Schurman Fine Papers*, 2018 U.S. Dist. LEXIS 40379, at *9–10 (N.D. Cal. Mar. 11, 2018) (finding commonality in a data breach case where "[t]he lawsuit involves a single data breach"). Therefore, commonality is satisfied.

### 3.   Rule 23(a)(3)'s typicality requirement is satisfied.

Typicality is satisfied because the "claims or defenses" of the named Plaintiffs "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality element "focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citation omitted). "[T]he typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 674 (S.D. Fla. 2011) (quoting *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (S.D. Fla. 2003)).

As with commonality, typicality is routinely met in data breach cases, as both the class representative and the other members of the class were subject

to the same event that gives rise the claims in the case, and thus subject to the same consequences of the allegedly improper data protection. *See In re Yahoo!*, 2020 U.S. Dist. LEXIS 129939, at \*25 ("the Settlement Class Representatives, like the Settlement Class as a whole, were all Yahoo users who allegedly either suffered identity theft and/or were placed at substantial risk for identity theft. Accordingly, Yahoo's allegedly inadequate data security harmed the Settlement Class Representatives in a common way as the rest of the Settlement Class Members."); *Sung*, 2018 U.S. Dist. LEXIS 40379, at \*10 (finding typicality where "[a]ll Settlement Employee Class Members allege that they provided PII to SRG as a condition of employment, and they may have provided PII for their spouses or other dependents.") Similarly here, Plaintiff's claim is the same as those of the other members of the class, as they stem from the same incident and are the result of the same alleged action (or lack of action) on the part of Defendant. Typicality is satisfied.

### 4. Rule 23(a)(4)'s adequacy requirement is satisfied.

Adequacy is satisfied because Plaintiffs and their counsel "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To determine whether adequacy is satisfied, courts ask two questions: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021). Both prongs are satisfied here. First, there is no conflict of interest between Plaintiffs and the Class. As

discussed above, Plaintiffs' claims arise from the same course of conduct and are based on the same legal theories as the claims of the absent class members, so their interests are aligned. *See Luczak v. Nat'l Bev. Corp.*, 548 F. Supp. 3d 1256, 1268 (S.D. Fla. 2021) ("[T]he typicality and adequacy analyses under Rule 23(a) tend to merge."). Second, Plaintiff vigorously prosecuted this case through his legal counsel, including by litigating a pair of motions to dismiss, conducting factual investigations of the data breach, and participating in an adversarial mediation. *See* Joint Decl. ¶¶ 8–13. Therefore, the class has been adequately represented at all times.

## B.  Rule 23(b)(3) is also satisfied.

"Rule 23(b)(3) has two elements: (1) predominance and (2) superiority." *Nuwer v. FCA U.S. LLC*, 343 F.R.D. 638, 652 (S.D. Fla. 2022). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Both elements are satisfied here.

### 1.  Common questions predominate.

Predominance is satisfied because "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 419 (N.D. Ga. 2017) (quoting *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th

Cir. 2009)). If "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (quotation omitted).

Here, predominance is satisfied because "Plaintiffs' case for liability depends, first and foremost, on whether [Defendant] used reasonable data security to protect Plaintiffs' personal information." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 312. As a result, "the focus" of this case is "on the extent and sufficiency of the specific security measures that [Defendant] employed," which presents "the precise type of predominant question that makes class-wide adjudication worthwhile." *Id.* Therefore, predominance is satisfied. *See In re Yahoo!,* 2020 U.S. Dist. LEXIS 129939, at *37–38 (applying same reasoning as *Anthem*); *Sung*, 2018 U.S. Dist. LEXIS 40379, at *11 (finding predominance because "[a]ll claims arise from one data breach, and liability can be determined on a class-wide basis").

## 2.   A class action is superior to individual adjudication.

Superiority is satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "The inquiry focuses 'not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Andreas-Moses v. Hartford Fire Ins. Co.*, 326

F.R.D. 309, 319 (M.D. Fla. 2018) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004)). The following factors are relevant to superiority: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3).

In data breach cases, individual damages tend to be small, and litigation costs tend to be expensive. *See In re Yahoo!*, 2020 U.S. Dist. LEXIS 129939, *40 ("[T]he amount at stake for individual Settlement Class Members is too small to bear the risks and costs of litigating a separate action. Litigation costs would be quite high, given that the case involves complex technical issues and requires substantial expert testimony."); *see also Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication"). Moreover, even if class members were to pursue their claims individually, the efficiency gained by having a single resolution of all the common issues dwarfs any benefit of allowing 12,446 individual lawsuits.

The Agreement provides Settlement Class Members with certain relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member to object to it or to request exclusion. Moreover, there is no indication that Settlement Class

13

Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action.

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620. Therefore, the Court should certify the Settlement Class under Rule 23(b)(3).

## II.  The Court should preliminarily approve the proposed settlement.

After it has been determined that provisional certification of the Settlement Class is appropriate, the Court must then determine whether the Settlement Agreement is worthy of preliminary approval of providing notice to the class. Courts in this Circuit have held that preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (internal quotations omitted).

First, arm's-length negotiations conducted by competent counsel with the assistance of a third-party mediator support finding that the settlement is the product of good faith negotiations. *See Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion."). In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys with vast experience handling data breach class action cases under the guidance of a former Chief U.S. Magistrate Judge with vast experience as a mediator, which ensures that the parties' negotiations were at all times adversarial. *See* S.A., at p. 2; Joint Decl. ¶¶ 8–12.

Second, Plaintiff believes that the claims asserted in the Class Action are meritorious and the Settlement Class would ultimately prevail at trial, but continued litigation against Defendants would have involved significant risk and delay. For example, class certification and summary judgment motions would take, at a minimum, a year to brief and obtain rulings from the Court. And while summary judgment might have been able to narrow some of the legal questions, it is likely that a jury would have to decide whether Defendant exercised proper care in protecting its data. This means that a jury trial likely could not be held until 2026.  Moreover, to the best of Class Counsel's knowledge, "no data breach case has gone to trial." Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. REV. 1223, 1235 (2020).  As such, a trial on the merits would be truly uncharted territory, making the

risks difficult to fully evaluate by any party. This is on top of the complexities and risks of class trials that, while manageable, are more significant than a single-plaintiff litigation. Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits, as Settlement Class Members can claim documented losses up to $5,000. S.A. at § 2.5(a). This result is further supported by the comparable data breach settlements cited above. *See supra* at 1. In Class Counsel's opinion—based on years of experience litigating class actions, including data breach cases—this settlement represents an excellent result for the class, well within the range of reasonableness. *See* Joint Dec. ¶¶ 16–18.

Third, there are no obvious deficiencies with the settlement, such as excessive attorney compensation. Settlement Class Counsel will request no more than one-third of the common fund as attorney fees, which would be a typical award in this circuit. *See, e.g.*, *Pinon v. Daimler AG*, 2021 U.S. Dist. LEXIS 249510, *50-51 (N.D. Ga. Nov. 30, 2021) ("[T]he average percentage fee award in this Circuit is now at or above 30%, as 'courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund.'"). In addition, Plaintiff intends to seek a reasonable service award for Mr. Briggs. Although the Eleventh Circuit held that service awards are not permitted under federal law in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), "[f]ollowing *Johnson*, a number of district courts in the Eleventh Circuit have found class representative service awards are still permitted under certain circumstances," including "in diversity jurisdiction cases where the underlying claims arise under state law." *Arnold*

*v. State Farm Fire & Cas. Co.*, 2023 U.S. Dist. LEXIS 199187, *2 (N.D. Ala. Nov. 6, 2023). This diversity case arises under Georgia law, which permits reasonable service awards, so the requested service award should not prevent preliminary approval. *See Eaves v. Earthlink, Inc.*, 2010 Ga. Super. LEXIS 1532, *25 (Fulton County Sup. Ct. June 7, 2010) (approving service award).

## III. The Court should approve the proposed notice plan.

If the court determines that it will "likely be able to" approve the settlement, it must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. FED. R. CIV. P. 23(e)(1)(B). Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. FED. R. CIV. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). Notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). FED. R. CIV. P. 23(c)(2)(B).

Here, the parties have agreed to a robust notice program to be administered by Simpluris, a well-respected third-party administrator. Defendant has agreed to provide Simpluris with, to the extent available, the name, email address, and physical mailing address of each Settlement Class Member. S.A. § 4.2. Simpluris will use that information to send direct notice to the Settlement Class Members. *Id.* at § 4.3, Exhibit B (Long Form Notice); Exhibit C (Summary Notice). The Notice and Claim Forms are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. *See id.* at Ex. A (Claim Form), Ex. B (Long Form Notice), Ex. C (Summary Notice). In addition to the direct notice, the Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Short Notice, Postcard, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement and Plaintiff's Motion for Attorney Fees, Litigation Costs, and Service Award. *Id.* at § 4.3(b). The Settlement Administrator will also make a toll-free help line staffed with a reasonable number of live operators available to provide Settlement Class Members with additional information about the settlement. *Id.* Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it.

## CONCLUSION

The Court should grant Plaintiff's Unopposed Motion for Preliminary Approval.

Dated: September 11, 2024          Respectfully submitted,

By: /s/ *Jared W. Connors*

Matthew R. Wilson (871480)
Jared W. Connors (*pro hac vice*)
MEYER WILSON CO., LPA
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
jconnors@meyerwilson.com

Raina Borrelli (*pro hac vice*)
Sam Strauss (*pro hac vice*)
STRAUSS BORRELLI PLLC
980 N. Michigan Ave, Suite 1610
Chicago, IL 60611
(872) 263-1100
raina@straussborrelli.com
sam@straussborrelli.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that on September 11, 2024 the foregoing was filed using the Court's CM/ECF system and will therefore be electronically served on all counsel of record.

/s/ *Jared W. Connors*
Jared W. Connors

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1(B)**

I certify that the foregoing document was prepared in 13-point Century Schoolbook in compliance with Local Rule 5.1(B).

/s/ *Jared W. Connors*
Jared W. Connors