IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MICHAEL BRIGGS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE NORTH HIGHLAND COMPANY,<br><br>Defendant. | Case No. 1:22-cv-03640<br><br>District Judge Steve C. Jones |

**PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEY FEES, LITIGATION COSTS, AND SERVICE AWARD**

Pursuant to FED. R. CIV. P. 23(h), Plaintiff Michael Briggs respectfully moves the Court for an order: (1) awarding attorneys' fees and costs to Class Counsel in the amount of one-third of the $650,000.00 common fund (or $216,666.67); and (2) granting a service award of $2,500 to Plaintiff Michael Briggs in recognition of his commitment to pursuing this litigation on behalf of the Class. This motion is based on the incorporated memorandum of law, the declarations and exhibits filed herewith, the pleadings and papers in this action, and any additional arguments of counsel.

## TABLE OF CONTENTS

                                                                                                                     **Page**

INTRODUCTION ................................................................................................ 1
BACKGROUND ................................................................................................. 1
    I.    Litigation History ................................................................................. 1
          A.    Factual Allegations ...................................................................... 1
          B.    The Court's Rulings .................................................................... 2
          C.    Settlement Negotiations ............................................................... 2
    II.   Summary of Settlement Terms .............................................................. 3
          A.    Proposed Settlement Class ........................................................... 3
          B.    Settlement Benefits ...................................................................... 3
          C.    Scope of Release .......................................................................... 4
ARGUMENT ...................................................................................................... 4
    I.    The Court should approve Plaintiff's requested attorney fees. ............ 4
          A.    The time and labor required support the requested fee. ............. 6
          B.    This case involved novel and difficult questions and required significant skill to litigate. ............................................................ 6
          C.    Class Counsel litigated this case on contingency ........................ 8
          E.    This settlement is an excellent result for the class. ................... 10
          F.    Class Counsel are experienced data privacy litigators ............... 12
          G.    This case involved significant risk. ............................................ 13
          H.    A one-third percentage award is consistent with similar cases.. 13
    II.   The Court should approve the requested service award ..................... 13
CONCLUSION .................................................................................................. 15

# INTRODUCTION

This class action settlement provides for a non-reversionary, $650,000.00 common fund on behalf of only 12,446 Class Members. In the data breach context, that is an exceptional result. It was achieved only after months of litigation, including motion practice, significant investigation by Class Counsel, and extensive arm's-length settlement negotiations. Class Counsel brokered this settlement in the face of the considerable risk inherent to class actions and to data breach class actions in particular. In light of their efforts on behalf of the Class, Class Counsel requests: (1) attorney fees in the amount of one-third of the $650,000.00 common fund (or $216,666.67), and (2) a service award of $2,500 to Plaintiff Michael Briggs in recognition of his commitment to pursuing this litigation on behalf of the Class.

# BACKGROUND

## I.  Litigation History

### A.  Factual Allegations

Defendant The North Highland Company is a consultancy firm. *See* First Am. Compl., ECF No. 32 at ¶¶ 1–2. Hackers gained access to North Highland's systems during a ransomware attack. *Id.* at ¶¶ 3, 11–14. Plaintiff alleges that the criminals exfiltrated a significant amount of personally identifying information ("PII") about current and former North Highland employees, including their names, national insurance numbers, social security numbers, tax numbers, home addresses, bank account numbers, payroll information, phone numbers, email addresses, date of birth, benefits

information, background check and employment screening information, performance records, and even medical information. *Id.* at ¶ 14.

Plaintiff Michael Briggs is a former North Highland employee. He alleges that the data breach occurred as a result of North Highland's failure to exercise reasonable care. *Id.* at ¶¶ 2, 23–33, 65–67. Briggs pleaded claims for negligence, negligence per se, and breach of contract. *Id.* at ¶¶ 78–101. North Highland denies all wrongdoing or that it failed to exercise reasonable care.

### B. The Court's Rulings

Defendant filed its first motion to dismiss on November 7, 2022. ECF No. 21. After the motion was briefed, the Eleventh Circuit issued a published opinion in a data breach case. *See Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213 (11th Cir. 2023). In light of the opinion in *Ramirez*, the Court denied North Highland's motion to dismiss without prejudice, allowing Plaintiff leave to amend. ECF No. 31.

Defendant filed its second motion to dismiss on June 30, 2023. ECF No. 33. On February 9, 2024, the Court granted the motion in part, holding that Plaintiff had plausibly alleged Article III standing and stated claims for negligence and negligence per se, but dismissed Plaintiff's breach of contract claim. ECF No. 42.

### C. Settlement Negotiations

Soon after the Court's ruling on Defendant's second motion to dismiss, the parties agreed to mediate the case, setting a mediation deadline in the scheduling order. ECF No. 47; Joint Decl. of Class Counsel ¶ 8. On May 22, 2024, the parties mediated the case before Hon. Edward A. Infante (Ret.), a

former Chief Magistrate Judge of the U.S. District Court for the Northern District of California. In connection with the mediation, the parties conducted informal discovery and exchanged adversarial letter briefs. Joint Decl. ¶¶ 9–14.

## II. Summary of Settlement Terms

### A. Proposed Settlement Class

The proposed Settlement Class is defined as follows:

> All current and former North Highland employees and their dependents and beneficiaries residing in the United States whose Personal Information was potentially compromised in the Data Incident affecting North Highland on or about May 26, 2022 to June 6, 2022, including all such persons who received notice of the breach. Excluded from the Settlement Class is any judge presiding over the Litigation and their first-degree relatives, judicial staff and persons who timely and validly request exclusion from the Settlement Class.

Settlement Agreement, Exhibit 1 at § 1.39 ("S.A."). There are approximately 12,446 Settlement Class Members. *Id.* § 1.40.

### B. Settlement Benefits

In return for a release of liability, Defendant has agreed to create a $650,000 non-reversionary Settlement Fund. S.A. § 1.43. The Settlement Fund will be used to pay for benefits to the Settlement Class, notice and administrative costs, and attorney's fees and expenses, and/or any Service Award awarded by the Court. *Id.* Settlement Class Members may file a claim for monetary relief from three categories: (1) Compensation for Unreimbursed Economic Losses, in an amount $5,000.00; (2) Lost Time, for up to six hours at $25 per hour for a maximum of up to $150 per person; or (3) an Alternative Cash Payment of $100.00. *Id.* § 2.5. In addition, all Settlement Class

3

Members may enroll in two years of credit monitoring, paid for by the Settlement Fund. *Id.* § 2.6.

In addition to the monetary relief, Defendant has committed to making security enhancements. *Id.* §§ 2.9–2.10. This provides additional relief for Settlement Class Members, particularly those whose data is still in Defendant's possession.

### C.  Scope of Release

All Settlement Class Members who do not opt-out will release all claims "that result from, arise out of, are based upon, or relate to the Data Incident." S.A. § 1.34; *see also id.* at § 8. This is a standard release, covering only those claims that could have been brought in this Action.

## ARGUMENT

### I.  The Court should approve Plaintiff's requested attorney fees.

Under Rule 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). The Eleventh Circuit has "held that in common fund settlements like this one, an attorney's fee award 'shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *In re Equifax Customer Data Sec. Breach Litig.)*, 999 F.3d 1247, 1278 (11th Cir. 2021) (quoting *Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991)). When determining the appropriate percentage award, courts consider the following factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment

4

by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases." *Desue v. 20/20 Eye Care Network, Inc.*, 2023 U.S. Dist. LEXIS 117355, *30–31 (S.D. Fla. July 8, 2023) (citing *Camden I*, 946 F.2d at 772 and awarding one-third in data breach case). "There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee," with 50% serving as the presumptive ceiling. *Camden I*, 946 F.2d at 774.

In this case, those factors support an award of one-third of the $650,000.00 common fund, which is a fairly typical award in this Circuit. *See In re Arby's Rest. Grp., Inc. Data Security Litig.*, 2019 U.S. Dist. LEXIS 111882, *18 (N.D. Ga. June 6, 2019) (noting that "[a]wards of up to 33% of the common fund are not uncommon in the Eleventh Circuit"); *Pinon v. Daimler AG*, 2021 U.S. Dist. LEXIS 249510, *50-51 (N.D. Ga. Nov. 30, 2021) ("[T]he average percentage fee award in this Circuit is now at or above 30%, as 'courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund.'").[1]

---

[1] The seventh factor ("time limitations imposed by the client or the circumstances") and eleventh factor ("the nature and the length of the professional relationship with the client") have limited relevance in this case, so the Court need not analyze them. *See In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, *238–39 (N.D. Ga. Mar. 17, 2020) ("The Court does not analyze two of the *Johnson* factors, the undesirability of the case

5

### A. The time and labor required support the requested fee.

The first *Camden I* factor is the time and labor required. *See Camden I*, 946 F.2d at 774. Class Counsel have spent hundreds of hours litigating this case. *See* Joint Decl. ¶¶ 16–18; *Flores v. Acorn Stairlifts*, 2020 U.S. Dist. LEXIS 253965, *6 (M.D. Fla. June 22, 2020) (holding that "[t]his factor weighs in favor of finding a 33% recovery reasonable" where "Plaintiffs represent that their counsel spent over 150 hours on this litigation"). And Class Counsel did so on a purely contingent basis, meaning that they faced a real risk that they would not be compensated for hundreds of hours of time. *See id.* ¶¶ 9–14; *Deas v. Russell Stover Candies*, 2005 U.S. Dist. LEXIS 60152, *39-40 (N.D. Ala. Dec. 22, 2005) (awarding one-third because "Class Counsel undertook this litigation on a completely contingent basis . . . yet expended hundreds of hours of time and incurred expenses"). Therefore, the time and labor that Class Counsel has advanced for the Class supports the requested fee.

### B. This case involved novel and difficult questions and required significant skill to litigate.

The second and third *Camden I* factors evaluate the complexity of the litigation and the skill required of counsel. *See Camden I*, 946 F.2d at 774. The quality of Class Counsel's representation in this case supports an award of one-third of the Settlement Fund. "A fee award of one third of the settlement fund is justified where class counsel has significant experience in the particular type of litigation at issue. . . . Moreover, a one-third fee is

---

and the nature of the attorney-client relationship, due to their limited applicability here."), *aff'd in relevant part* 999 F.3d 1247, 1278 (11th Cir. 2021).

6

appropriate where counsel litigated effectively, and their experience was essential for obtaining the result." *Marshall v. Northrop Grumman Corp.*, 2020 U.S. Dist. LEXIS 177056, *11 (C.D. Cal. Sept. 18, 2020) (internal citation omitted).

In this case, Class Counsel are experienced privacy class action litigators. Joint Decl. ¶¶ 21–26. This experience was a significant asset to the class. All class actions are complex. *See Farmer v. Humana Inc.*, 2022 U.S. Dist. LEXIS 232541, *11–12 (M.D. Fla. Dec. 28, 2022) ("class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome."). But this class action was even more complex than usual because "data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits. Georgia law, in particular, presents challenges." *In re Arby's Rest. Grp., Inc. Data Security Litig.*, 2019 U.S. Dist. LEXIS 111882, *15 (N.D. Ga. June 6, 2019); *see Farmer*, 2022 U.S. Dist. LEXIS 232541, *11 (noting that "the law surrounding data breach cases is new and evolving"); *In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 2016 U.S. Dist. LEXIS 200113, *40 (N.D. Ga. Aug. 23, 2016) ("Courts presiding over similar cases have recognized that the legal issues involved in data breach litigation are cutting-edge and unsettled, so that many resources would necessarily be spent litigating substantive law as well as other issues."). Therefore, the Class benefited from Class Counsel's skill and experience regarding the specific issues in this case, which justifies an award of one-third. *See In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, *38-39 (C.D. Cal. June 10, 2005) ("Class Counsel's

7

experience representing plaintiffs in class actions, particularly [cases of this type], justifies an award of one-third of the Settlement Fund in attorneys' fees.").

### C. Class Counsel litigated this case on contingency.

The fourth, fifth, and sixth *Camden I* factors ask whether the litigation precluded counsel from accepting other employment, the customary fee, and whether the fee is fixed or contingent. *See Camden I*, 946 F.2d at 774. By taking this case on a contingent basis, Class Counsel shouldered significant risk on behalf of the class. Therefore, these factors support the requested fee.

If Class Counsel had not taken on this case, they would have been able to pursue other employment. *See* Joint Decl. ¶ 10; *Pinon v. Daimler AG*, 2021 U.S. Dist. LEXIS 249510, *54 (N.D. Ga. Nov. 30, 2021) (awarding one-third where "[b]ut for the time and effort they spent in this case, and given the demand for their services attributable to their high level of skill and competence, Plaintiffs' attorneys would have spent significant time on other matters"). Instead, they pursued this case on contingency, thereby advancing all fees and expenses on behalf of the class and taking on a significant risk of nonpayment. *See* Joint Decl. ¶¶ 9–14; *Pinon*, 2021 U.S. Dist. LEXIS 249510, *54 (awarding one-third and noting that "[a] contingency fee often justifies a larger award of attorneys' fees because, if the case is lost, an attorney realizes no return for investing large amounts of time and resources in the case"). The customary percentage for contingent-fee litigation is between one-third and forty percent. *See In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, *243 (N.D. Ga. Mar. 17, 2020) (noting that the

8

percentage "typically charged by lawyers who handle complex civil litigation on a contingent fee basis . . . customarily range[s] from 33.3% to 40% of the recovery"), *aff'd in relevant part* 999 F.3d 1247, 1278 (11th Cir. 2021). Therefore, these factors support Class Counsel's request for one-third of the common fund.

Moreover, the risk of nonpayment was particularly significant in this case. As discussed above, data breach class actions are challenging given the ever-changing case law and the reality that many such cases are dismissed at the pleading stage, few survive through class certification, and *none* has ever been tried. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 135573, *13 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, *21 (E.D. Pa. Sep. 23, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). *In re TD Ameritrade Account Holder Litig.*, 2011 U.S. Dist. LEXIS 103222, *36 (N.D. Cal. Sep. 12, 2011) (noting that "many [data breach cases] have been dismissed at the pleading stage"). As one federal district court recently observed in approving a data breach settlement:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex."). Plaintiffs also faced the risk that [defendant] would successfully oppose class certification, obtain summary judgment on one or more of their claims, or win at trial or on appeal. Also, the cost for [defendant] and Plaintiffs to maintain the lawsuit would be high, given the amount of documentary evidence as well as the expert costs both parties

9

> would incur in the context of class certification, summary judgment, and trial. As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

*Yvonne Mart Fox v. Iowa Health Sys.*, 2021 U.S. Dist. LEXIS 40640, at *14 (W.D. Wis. Mar. 4, 2021). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). And finally, no data breach class action has been tried to a jury, leaving the level of recovery available at trial on the types of claims brought here a complete unknown. *See Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, *18–19 (C.D. Cal. Feb. 22, 2022) ("Moreover, these risks are compounded by the fact that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury").

Given the substantial risks borne by Class Counsel, this factor weighs in favor of the requested fee. *See Koenig v. Lime Crime, Inc.*, 2018 U.S. Dist. LEXIS 245359, *20 (C.D. Cal. Apr. 2, 2018) (holding in data breach case that "an upward departure from the 25 percent benchmark [is] reasonable in light of the results achieved, the risks of litigation, the contingent nature of the fee, and the financial burden carried by Class Counsel" and thus "approv[ing] an award of 38 percent of the common fund, or $140,000").

### E. This settlement is an excellent result for the class.

The eighth *Camden I* factor is the result obtained for the class. *See Camden I*, 946 F.2d at 774. The proposed settlement will establish a $650,000

*non-reversionary* common fund for the benefit of the proposed 12,446 person Settlement Class. The Settlement Fund is thus worth $52 per class member, which is exceedingly favorable when compared to other settlements like it. Courts have consistently approved data breach settlements providing class members $3 or less per person. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ($1.45 per class member is "meaningful consideration"); *In re Experian Data Breach Litig.*, 2019 U.S. Dist. LEXIS 81243, *25 (C.D. Cal. May 10, 2019) (settlement provided "a $1.47 payout per person, which compares favorably to other approved data breach settlements"); *In re Premera Blue Cross Cust. Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093, *65–67 (D. Or. July 29, 2019) (fund worth $3.02 per class member provides "significant value"); *Gaston v. Fabfitfun, Inc.*, 2021 U.S. Dist. LEXIS 147383, *18–20 & n.1 (C.D. Cal. Apr. 2, 2021) ($1.42 per class member is "substantial" relief "on par with that in other data breach settlements"). A comparison to other data breach settlements further illustrates the point:

| Case Citation | Number of Class Members | Total Value of Non-Reversionary Common Fund[2] | Value Per Class Member |
|---|---|---|---|
| *Koenig v. Lime Crime, Inc.*, 2018 U.S. Dist. LEXIS 245359, at *11 (C.D. Cal. Apr. 2, 2018) | 107,726 | $110,000 | $1.02 |

---

[2] This chart focuses on the non-reversionary monetary relief of the described settlements rather than, for example, injunctive relief, which is often difficult to assign a precise value.

11

| | | | |
|---|---|---|---|
| *Gaston v. Fabfitfun, Inc.*, 2021 U.S. Dist. LEXIS 147383, *18–20 & n.1 (C.D. Cal. Apr. 2, 2021) | 441,000 | $625,000 | $1.42 |
| *Carter v. Vivendi Ticketing United States LLC*, 2023 U.S. Dist. LEXIS 210744, at *2, *13 (C.D. Cal. Oct. 30, 2023) | 437,310 | $3,000,000 | $6.86 |
| *Gupta v. Aeries Software, Inc.*, 2023 U.S. Dist. LEXIS 36141, at *5 (C.D. Cal. Mar. 3, 2023) | 98,199 | $1,750,000 | $17.82 |

The result Plaintiff achieved in this case is remarkable in comparison. *Cf. Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, *19 (C.D. Cal. Feb. 22, 2022) ("Plaintiffs' $15 to $275 per Class Member value estimates greatly exceed the settlement value per class member in comparable data breach cases.").

### F. Class Counsel are experienced data privacy litigators.

The ninth *Camden I* factor is the skill and experience of counsel. *See Camden I*, 946 F.2d at 774. As discussed above, Class Counsel are experienced data privacy and consumer protection lawyers. *See supra* Part I.B. They brought decades of experience to bear in this case, which further supports the requested fee.

### G. This case involved significant risk.

The tenth *Camden I* factor is the "undesirability" of the case. *See Camden I*, 946 F.2d at 774. As previously discussed, data breach class actions are exceedingly complex and are customarily litigated on a contingent-fee basis, which creates a significant risk of non-payment. *See supra* Part I.B–C. Thus, many lawyers would consider this case undesirable, which supports the requested fee.

### H. A one-third percentage award is consistent with similar cases.

The twelfth *Camden I* factor is awards in similar cases. *See Camden I*, 946 F.2d at 774. In this case, Class Counsel has requested one-third of the $650,000.00 common fund, which is a fairly typical award in this Circuit. *See In re Arby's Rest. Grp., Inc. Data Security Litig.*, 2019 U.S. Dist. LEXIS 111882, *18 (N.D. Ga. June 6, 2019) (noting that "[a]wards of up to 33% of the common fund are not uncommon in the Eleventh Circuit"); *Pinon v. Daimler AG*, 2021 U.S. Dist. LEXIS 249510, *50-51 (N.D. Ga. Nov. 30, 2021) ("[T]he average percentage fee award in this Circuit is now at or above 30%, as 'courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund.'"). Therefore, this factor also supports the requested fee.

## II. The Court should approve the requested service award.

Plaintiff requests a $2,500 service award for Mr. Briggs. Although the Eleventh Circuit held that service awards are not permitted under federal common law in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), "[f]ollowing *Johnson*, a number of district courts in the Eleventh

13

Circuit have found class representative service awards are still permitted under certain circumstances," including "in diversity jurisdiction cases where the underlying claims arise under state law." *Arnold v. State Farm Fire & Cas. Co.*, 2023 U.S. Dist. LEXIS 199187, *2 (N.D. Ala. Nov. 6, 2023) (collecting cases). This line of cases recognizes that "*Johnson I* examined federal common law, based on a federal cause of action, to arrive at its decision. There is nothing in *Johnson I* to suggest that it is applicable to cases arising under state law." *Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1110 (M.D. Fla. 2023).

Under the *Erie* doctrine, federal courts sitting in diversity apply state law to substantive issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (noting that "federal courts sitting in diversity apply state substantive law and federal procedural law"). "In diversity cases, federal courts have held that the issue of whether a service award is appropriate is governed by state law." *Roth v. Geico Gen. Ins. Co.*, 2020 U.S. Dist. LEXIS 188204, *8 (S.D. Fla. Oct. 8, 2020) (collecting cases); *accord Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1195 (10th Cir. 2017) (holding that "*Erie* requires us to apply Oklahoma law" to determine whether service awards are allowed).

Thus, *Johnson*—a federal question case applying federal common law— does not apply here. To the contrary, this diversity case arises under Georgia law, which permits reasonable service awards. *See Eaves v. Earthlink, Inc.*, 2010 Ga. Super. LEXIS 1532, *25 (Fulton County Sup. Ct. June 7, 2010)

14

(approving service award). A $2,500 service award is a modest amount to recognize Mr. Briggs' invaluable contribution to this case. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2008 U.S. Dist. LEXIS 130889, *12 (N.D. Ga. Mar. 3, 2008) (awarding $100,000 to each class representative); *Martinez v. Woodvalley Landscape*, 2021 U.S. Dist. LEXIS 30908, *4 (N.D. Ga. Feb. 17, 2021) (awarding $2,500); *Carr v. Ocwen Loan Servicing*, 2014 U.S. Dist. LEXIS 202087, *35 (N.D. Ga. Apr. 25, 2014) (same); *Guzman v. Consumer Law Grp., P.A.*, 2016 U.S. Dist. LEXIS 62410, *10 (S.D. Ga. May 11, 2016) ("The amount of the requested service awards - $2,500 per Representative Plaintiff - is fair and reasonable."). Therefore, the Court should approve the requested service award.

## CONCLUSION

The Court should grant Plaintiff's Motion for Attorney Fees, Litigation Costs, and Service Award.

Dated: November 27, 2024           Respectfully submitted,

By: /s/ *Jared W. Connors*

Matthew R. Wilson (871480)
Jared W. Connors (*pro hac vice*)
MEYER WILSON CO., LPA
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
jconnors@meyerwilson.com

Raina Borrelli (*pro hac vice*)
Sam Strauss (*pro hac vice*)
STRAUSS BORRELLI PLLC
980 N. Michigan Ave, Suite 1610
Chicago, IL 60611
(872) 263-1100
raina@straussborrelli.com
sam@straussborrelli.com


*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that on November 27, 2024 the foregoing was filed using the Court's CM/ECF system and will therefore be electronically served on all counsel of record.

/s/ *Jared W. Connors*
Jared W. Connors

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1(B)

I certify that the foregoing document was prepared in 13-point Century Schoolbook in compliance with Local Rule 5.1(B).

/s/ *Jared W. Connors*
Jared W. Connors
