## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MICHAEL BRIGGS, on behalf of himself and all others similarly situated, | Case No. 1:22-cv-03640 |
| Plaintiff, | District Judge Steve C. Jones |
| v. | |
| THE NORTH HIGHLAND COMPANY, | |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to FED. R. CIV. P. 23(e), Plaintiff Michael Briggs respectfully moves the Court for an order granting final approval of the proposed class action settlement. This motion is based on the incorporated memorandum of law, the declarations and exhibits filed herewith, the pleadings and papers in this action, and any additional arguments of counsel. Plaintiff's counsel conferred with Defendant's counsel, and Defendant does not oppose this motion.

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 2

    I.    Litigation History ....................................................................... 2

        A.    Factual Allegations ............................................................... 2

        B.    The Court's Rulings ............................................................ 2

        C.    Settlement Negotiations ...................................................... 3

    II.    Summary of Settlement Terms .................................................. 3

        A.    Proposed Settlement Class .................................................. 3

        B.    Settlement Benefits ............................................................. 4

        C.    Scope of Release ................................................................. 5

        D.    Attorney's Fees and Service Award ................................... 5

        E.    Notice and Claims Administration ...................................... 5

ARGUMENT .................................................................................................... 6

    I.    The Court should grant final approval to the proposed settlement................ 6

        A.    The Class was adequately represented. ................................. 7

        B.    The settlement was negotiated at arm's length..................... 7

        C.    The settlement provides outstanding relief. .......................... 8

        D.    The settlement treats class members equitably. ................... 13

    II.    The Court should grant final certification to the proposed settlement class. ........................................................................... 14

        A.    All requirements of Rule 23(a) are satisfied. ....................... 14

        B.    Rule 23(b)(3) is also satisfied. .............................................. 18

    III.    The notice plan complied with due process. ........................... 22

CONCLUSION.................................................................................................. 23

# INTRODUCTION

On October 15, 2024, the Court granted preliminary approval of the proposed class action settlement. *See* Preliminary Approval Order, ECF No. 54. Since then, notice has gone out to class members as directed by the Court and consistent with the terms of the Settlement Agreement. *See* Declaration of Anne-Marie Marra at ¶¶ 5–14 ("Marra Decl."). The reaction to the settlement has been overwhelmingly positive: not a single class member opted-out or objected to the settlement. *Id.* at ¶¶ 16–17; *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1373 (N.D. Ga. 2019) (holding that where there were no objections and only one opt-out, "[t]he lack of opposition to the Settlement clearly supports final approval"); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("The fact that there are no objections to either the Settlement or to petitioners' request for attorney's fees is strong evidence of the propriety and acceptability of that request."). If the proposed settlement is granted final approval, each valid claimant will receive over $280. *Id.* at ¶ 23. This is an excellent result for the class, especially in the context of a data breach case. Therefore, Plaintiff moves the Court for an order granting final approval.

# BACKGROUND

## I.  Litigation History

### A.  Factual Allegations

Defendant The North Highland Company is a consultancy firm. *See* First Am. Compl., ECF No. 32 at ¶¶ 1–2. Hackers gained access to North Highland's systems during a ransomware attack. *Id.* at ¶¶ 3, 11–14. Plaintiff alleges that the criminals exfiltrated a significant amount of personally identifying information ("PII") about current and former Norther Highland employees, including their names, national insurance numbers, social security numbers, tax numbers, home addresses, bank account numbers, payroll information, phone numbers, email addresses, date of birth, benefits information, background check and employment screening information, performance records, and even medical information. *Id.* at ¶ 14.

Plaintiff Michael Briggs is a former North Highland employee. He alleges that the data breach occurred as a result of North Highland's failure to exercise reasonable care. *Id.* at ¶¶ 2, 23–33, 65–67. Briggs pleaded claims for negligence, negligence per se, and breach of contract. *Id.* at ¶¶ 78–101.

### B.  The Court's Rulings

Defendant filed its first motion to dismiss on November 7, 2022. ECF No. 21. After the motion was briefed, the Eleventh Circuit issued a published opinion in a data breach case. *See Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213 (11th Cir. 2023). In light of the opinion in *Ramirez*, the Court denied

North Highland's motion to dismiss without prejudice, allowing Plaintiff leave to amend. ECF No. 31.

Defendant filed its second motion to dismiss on June 30, 2023. ECF No. 33. On February 9, 2024, the Court granted the motion in part and denied it in part, dismissing Plaintiff's breach of contract claim but holding that Plaintiff had plausibly alleged Article III standing and stated claims for negligence and negligence per se. ECF No. 42.

### C.   Settlement Negotiations

Soon after the Court's ruling on Defendant's second motion to dismiss, the parties agreed to mediate the case, setting a mediation deadline in the scheduling order. ECF No. 47. On May 22, 2024, the parties mediated the case before Hon. Edward A. Infante (Ret.), a former Chief Magistrate Judge of the U.S. District Court for the Northern District of California. In connection with the mediation, the parties conducted informal discovery and exchanged adversarial letter briefs. Joint Decl. of Class Counsel, ECF No. 53-1 at ¶¶ 8–12.

## II.   Summary of Settlement Terms

### A.   Proposed Settlement Class

The proposed Settlement Class is defined as follows:

All current and former North Highland employees and their dependents and beneficiaries residing in the United States whose Personal Information was potentially compromised in the Data Incident affecting North Highland on or about May 26, 2022 to June 6, 2022, including all such persons who received notice of the breach. Excluded from the Settlement Class is any judge presiding over the

Litigation and their first-degree relatives, judicial staff and persons
who timely and validly request exclusion from the Settlement Class.

S.A., ECF No. 53-2 at § 1.39. There are approximately 12,446 Settlement
Class Members. *Id.* § 1.40.

**B. Settlement Benefits**

In return for a release of liability, Defendant has agreed to create a
$650,000 non-reversionary Settlement Fund. S.A., ECF No. 53-2 § 1.43. The
Settlement Fund will be used to pay for benefits to the Settlement Class,
notice and administrative costs, and attorney's fees and expenses, and/or any
Service Award awarded by the Court. *Id.* Settlement Class Members may file
a claim for monetary relief from three categories: (1) Compensation for
Unreimbursed Economic Losses, up to the amount of $5,000.00; (2) Lost
Time, for up to six hours at $25 per hour, for a maximum of up to $150 per
person; or (3) an Alternative Cash Payment of $100.00. *Id.* § 2.5. In addition,
all Settlement Class Members may enroll in two years of credit monitoring,
paid for by the Settlement Fund. *Id.* § 2.6. Once those payments are made,
the rest of the Net Settlement Amount will be distributed pro rata. In this
case, pro rata claimants will each receive estimated payments of over $400.
*See* Marra Decl. at ¶ 23.

In addition to the monetary relief, Defendant has committed to making
security enhancements. *Id.* §§ 2.9–2.10. This provides additional relief for
Settlement Class Members, particularly those whose data is still in
Defendant's possession.

### C.  Scope of Release

All Settlement Class Members who do not opt-out will release all claims "that result from, arise out of, are based upon, or relate to the Data Incident." S.A., ECF No. 53-2 at § 1.34; *see also id.* at § 8. This is a standard release, covering only those claims that could have been brought in this Action.

### D.  Attorney's Fees and Service Award

Settlement Class Counsel filed a motion seeking (1) reasonable Attorney Fees and Litigation Costs, in an amount not to exceed one-third of the Settlement Fund; and (2) a reasonable service award of no more than $2,500 for the Representative Plaintiff, Mr. Briggs. *See* Unopposed Motion for Attorney Fees, ECF No. 57; S.A., ECF No. 53-2 at § 9.1. The settlement is not contingent on the Court's award of attorney fees, litigation costs, or a service award. *Id.* § 9.4.

### E.  Notice and Claims Administration

The parties retained Simpluris, a well-known class action settlement administrator, to serve as Claims Administrator. S.A. § 1.7. Simpluris was responsible for administering the notice and claims program. *Id.*

The settlement called for a robust notice program. Defendant agreed to provide Simpluris with, to the extent available, the name, email address, and physical mailing address of each Settlement Class Member. *Id.* § 4.2. Simpluris will use that information to send the Summary Notice forms to the Settlement Class Members. *Id.* at § 4.3, Exhibit B (Long Form Notice); Exhibit C (Summary Notice). Simpluris will also establish a settlement

website, which will contain the notice forms, claim forms, and other information that will assist Settlement Class Members in understanding the proposed settlement. *Id.* at § 4.3, Exhibit A (Claim Form).

Simpluris has successfully implemented that notice plan. *See* Marra Decl. at ¶¶ 5–14. In total, 99.37% of class members received direct notice. *Id.* at ¶ 12.

## ARGUMENT

### I. The Court should grant final approval to the proposed settlement.

Class actions may only be settled on a classwide basis with court approval. FED. R. CIV. P. 23(e). Courts may approve a class action settlement if it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Relevant considerations include whether: (A) "the class representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate"; and (D) "the proposal treats class members equitably relative to one another." *Id.* "Along with the criteria from Rule 23(e), courts in this Circuit also look to the following six *Bennett* factors, which overlap with the federal rule: '(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.'" *Express*

*Freight Int'l v. Hino Motors Ltd.*, 2024 U.S. Dist. LEXIS 59519, *7-8 (S.D. Fla. Apr. 1, 2024) (citation omitted); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). In this case, each factor supports final approval.

## A. The Class was adequately represented.

Rule 23(e)(2)(A)'s adequacy requirement turns on whether plaintiffs' counsel "possessed sufficient information and knowledge of the claims, issues, and defenses prior to negotiating and settling the claims." *Cook v. Gov't Emples. Ins. Co.*, 2020 U.S. Dist. LEXIS 111956, *18 (M.D. Fla. June 22, 2020) (noting that this factor "overlaps with the preexisting *Bennett* 'stage of proceedings' factor"). Here, the parties vetted the legal strength of their claims by briefing multiple motions to dismiss, and they also engaged in critical informal discovery in connection with the mediation. *See* Joint Decl. of Class Counsel, ECF No. 53-1 at ¶¶ 8–11. Therefore, this factor supports final approval. *See Kukorinis v. Walmart, Inc.*, 2021 U.S. Dist. LEXIS 259110, *19 (S.D. Fla. Sep. 20, 2021) (holding that this factor was satisfied where parties briefed a motion to dismiss and exchanged informal discovery prior to mediation).

## B. The settlement was negotiated at arm's length.

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). When a settlement was negotiated with the assistance of an experienced mediator, courts consistently hold that the settlement was the product of arm's length, non-collusive negotiations. *See*

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of . . . a highly experienced mediator, lends further support to the absence of collusion."); *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1369–70 (N.D. Ga. 2019) ("The parties settled this Action by mediation with an experienced mediator, Steven Pearl, which further confirms that the process was procedurally sound and not collusive."). In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys under the guidance of a former Chief U.S. Magistrate Judge with vast experience as a mediator, ensuring that the parties' negotiations were at all times adversarial. *See* Joint Decl. of Class Counsel, ECF No. 53-1 at ¶¶ 8–12. This factor supports approval.

### C.   The settlement provides outstanding relief.

Rule 23(e)(2)(C) requires courts to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C). Each of those factors supports final approval.

*Costs, Risks, and Delay*. The first factor under Rule 23(e)(2)(C)—the cost, risk, and delay of trial and appeal—supports final approval. *See Cook*, 2020

U.S. Dist. LEXIS 111956, *20 (M.D. Fla. June 22, 2020) (noting that "[t]his factor overlaps with the first four *Bennett* factors"). In particular, the "legal uncertainty" of the claims at issue "supports approval of a settlement," as courts have noted that the law surrounding "threshold issues" in data breach cases is still being developed. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 317 (N.D. Cal. 2018).

While Plaintiff is confident in the strength of his case, data breach class actions are challenging, given the ever-changing case law and the reality that many such cases are dismissed at the pleading stage, few survive through class certification, and *none* has ever been tried. *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 135573, *13 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, *21 (E.D. Pa. Sep. 23, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."); *In re TD Ameritrade Account Holder Litig.*, 2011 U.S. Dist. LEXIS 103222, *36 (N.D. Cal. Sept. 12, 2011) (noting that "many [data breach cases] have been dismissed at the pleading stage"). As one federal district court observed in approving a data breach settlement:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex."). Plaintiffs also faced the risk that [defendant] would successfully oppose class certification, obtain summary judgment on one or more of their claims, or win at trial or on appeal. Also, the cost

for [defendant] and Plaintiffs to maintain the lawsuit would be high, given the amount of documentary evidence as well as the expert costs both parties would incur in the context of class certification, summary judgment, and trial. As such, the current Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

*Yvonne Mart Fox v. Iowa Health Sys.*, 2021 U.S. Dist. LEXIS 40640, *14 (W.D. Wis. Mar. 4, 2021).

Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.* 293 F.R.D. 21 (D. Me. 2013). And finally, no data breach class action has been tried before a jury, leaving the level of recovery available at trial on the types of claims brought here a complete unknown. *See Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, *18–19 (C.D. Cal. Feb. 22, 2022) ("Moreover, these risks are compounded by the fact that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury.").

In addition, class certification and summary judgment motions would take, at a minimum, a year to brief and obtain rulings from the Court. And while summary judgment might have been able to narrow some of the legal questions, it is highly likely that a jury would have to decide whether Defendant exercised proper care in protecting its data. This means that a jury trial likely could be held no earlier than 2027.

Against the backdrop of those very real risks and delays, this settlement provides substantial and immediate relief to class members. Defendant has agreed to establish a $650,000 *non-reversionary* common fund for the benefit of the proposed 12,446 person Settlement Class. The Settlement Fund is thus worth $52 per class member, which is exceedingly favorable when compared to other settlements like it. Courts have consistently approved data breach settlements providing class members $3 or less per person. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ($1.45 per class member is "meaningful consideration"); *In re Experian Data Breach Litig.*, 2019 U.S. Dist. LEXIS 81243, *25 (C.D. Cal. May 10, 2019) (settlement provided "a $1.47 payout per person, which compares favorably to other approved data breach settlements"); *In re Premera Blue Cross Cust. Data Sec. Breach Litig.*, 2019 U.S. Dist. LEXIS 127093, *65–67 (D. Or. July 29, 2019) (fund worth $3.02 per class member provides "significant value"); *Gaston v. Fabfitfun, Inc.*, 2021 U.S. Dist. LEXIS 147383, *18–20 & n.1 (C.D. Cal. Apr. 2, 2021) ($1.42 per class member is "substantial" relief "on par with that in other data breach settlements"). The result Plaintiff achieved in this case is remarkable in comparison. *Cf. Hashemi v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, *19 (C.D. Cal. Feb. 22, 2022) ("Plaintiffs' $15 to $275 per Class Member value estimates greatly exceed the settlement value per class member in comparable data breach cases."). Therefore, the settlement presents a fair trade-off in light of the significant risks and delays in this case, which favors final approval.

*Distribution Method.* The claims process was simple, straightforward, and equitable. The Claim Form was simple and easy to understand, and it could be easily submitted online. *See* S.A., ECF No. 53-2 at Ex. A. Moreover, the settlement is non-reversionary, meaning that every dollar of the $650,000 will be spent for the benefit of class members and not a single penny will return to Defendant. *See Express Freight Int'l v. Hino Motors Ltd.*, 2024 U.S. Dist. LEXIS 59519, *15 (S.D. Fla. Apr. 1, 2024) (holding that Rule 23(e)(2)(C) was satisfied "[b]ecause the Settlement is non-reversionary, [so] no unused funds will be returned to [defendant]"). Therefore, this factor supports final approval.

*Attorney Fees.* Plaintiff's counsel have requested attorney fees in the amount of one-third of the common fund which, as set forth in Plaintiff's separately filed motion for attorney fees, is reasonable in these circumstances. *See* ECF No. 57. As explained in Plaintiff's separate fee petition, an award of one-third is well warranted when claimants will receive over $280 in a case in which the losses are relatively modest and difficult to measure. *See, e.g.*, *Pinon v. Daimler AG*, 2021 U.S. Dist. LEXIS 249510, *50-51 (N.D. Ga. Nov. 30, 2021) ("[T]he average percentage fee award in this Circuit is now at or above 30%, as 'courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund.'").

*Rule 23(e)(3) Agreement.* The Parties did not make any side agreements subject to disclosure under FED. R. CIV. P. 23(e)(3).

### D.   The settlement treats class members equitably.

When considering whether the settlement "treats class members
equitably relative to each other," FED. R. CIV. P. 23(e)(2)(D), courts seek "to
ensure that similarly situated class members are treated similarly and that
dissimilarly situated class members are not arbitrarily treated as if they were
similarly situated," *Mandalevy v. Bofi Holding, Inc.*, 2022 U.S. Dist. LEXIS
89205, *28 (S.D. Cal. Mar. 17, 2022) (quoting 4 William Rubenstein, *Newberg
on Class Actions* § 13:56 (5th ed. 2020)). "Matters of concern could include
whether the apportionment of relief among class members takes appropriate
account of differences among their claims, and whether the scope of the
release may affect class members in different ways that bear on the
apportionment of relief." FED. R. CIV. P. 23, advisory committee note to 2018
amendment.

Here, all class members had an equal right to file a claim against the
Settlement Fund. To account for the possibility that some class members may
have suffered actual identity theft or wasted time and therefore incurred
greater damages, the settlement allowed class members to submit claims for
reimbursement of out-of-pocket losses or the value of their lost time before
distributing the rest of the fund pro rata among the remaining valid
claimants. Thus, the claims process in this case equitably accounted for
potential differences between how individuals were affected by the data
security incident.

## II.  The Court should grant final certification to the proposed settlement class.

Before the Court may approve the settlement, it must find that it will "likely be able to . . . certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B)(ii). Now that the Court has provisionally certified the settlement class under Rule 23(b)(3), Plaintiff respectfully submits that the Court should grant final certification for purposes of judgment.

### A.  All requirements of Rule 23(a) are satisfied.

"Four elements are required for a class to be certified under Rule 23(a) of the FRCP: numerosity, commonality, typicality, and adequacy of counsel." *Hines v. Widnall*, 334 F.3d 1253, 1255-56 (11th Cir. 2003). Each element is satisfied here.

#### 1.  Rule 23(a)(1)'s numerosity requirement is satisfied.

Numerosity is satisfied because "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Rule 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp.*, LLC, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (Scola, J.) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009)). The "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'" *Id.* (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). In this case,

there are approximately 12,446 Settlement Class Members, which is far too many for individual joinder. S.A., ECF No. 53-2 at § 1.41. Therefore, numerosity is satisfied.

### 2. Rule 23(a)(2)'s commonality requirement is satisfied.

Commonality is satisfied because this case presents "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member." *Sellers v. Rushmore Loan Mgmt. Servs.*, 941 F.3d 1031, 1040 (11th Cir. 2019) (quoting *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016)). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Here, the central question raised by the litigation is whether Defendant took reasonable steps to protect the personal information of class members that resided in Defendant's systems. That issue depends on the acts and omissions of Defendant, rather than facts particular to any one class member, and thus is a question common to the class. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD- 2800-TWT, 2020 WL 256132, at *11 (N.D. Ga. Mar. 17, 2020) (*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016)) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement); *Hashem v.*

*Bosley, Inc.,* 2022 U.S. Dist. LEXIS 119454, at *7 (C.D. Cal. Feb. 22, 2022) (finding commonality where "Plaintiffs maintain that there are multiple common question of law or fact—i.e., whether Defendant breached its duty to safeguard the Class's PII, whether Defendant unreasonably delayed in notifying the Class about the data breach, and whether Defendant's security measures or lack thereof violated various statutory provisions."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, at *22 (N.D. Cal. July 20, 2020) (finding commonality in a data breach case, as "[i]n the case's current posture, whether Yahoo employed sufficient security measures to protect the Settlement Class Members' Personal Information from the Data Breaches lies at the heart of every claim."); *Sung v. Schurman Fine Papers*, 2018 U.S. Dist. LEXIS 40379, at *9–10 (N.D. Cal. Mar. 11, 2018) (finding commonality in a data breach case where "[t]he lawsuit involves a single data breach"). Therefore, commonality is satisfied.

### 3.  Rule 23(a)(3)'s typicality requirement is satisfied.

Typicality is satisfied because the "claims or defenses" of the named Plaintiffs "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality element "focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citation omitted). "[T]he typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they

need not be substantially identical." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 674 (S.D. Fla. 2011) (quoting *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (S.D. Fla. 2003)).

As with commonality, typicality is routinely met in data breach cases, as both the class representative and the other members of the class were subject to the same event that gives rise the claims in the case, and thus subject to the same consequences of the allegedly improper data protection. *See In re Yahoo!*, 2020 U.S. Dist. LEXIS 129939, *25 ("the Settlement Class Representatives, like the Settlement Class as a whole, were all Yahoo users who allegedly either suffered identity theft and/or were placed at substantial risk for identity theft. Accordingly, Yahoo's allegedly inadequate data security harmed the Settlement Class Representatives in a common way as the rest of the Settlement Class Members."); *Sung*, 2018 U.S. Dist. LEXIS 40379, at *10 (finding typicality where "[a]ll Settlement Employee Class Members allege that they provided PII to SRG as a condition of employment, and they may have provided PII for their spouses or other dependents.") Similarly here, Plaintiff's claim is the same as those of the other members of the class, as they stem from the same incident and are the result of the same alleged action (or lack of action) on the part of Defendant. Typicality is satisfied.

### 4. Rule 23(a)(4)'s adequacy requirement is satisfied.

Adequacy is satisfied because Plaintiffs and their counsel "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To

determine whether adequacy is satisfied, courts ask two questions: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021). Both prongs are satisfied here. First, there is no conflict of interest between Plaintiffs and the Class. As discussed above, Plaintiffs' claims arise from the same course of conduct and are based on the same legal theories as the claims of the absent class members, so their interests are aligned. *See Luczak v. Nat'l Bev. Corp.*, 548 F. Supp. 3d 1256, 1268 (S.D. Fla. 2021) (noting that typicality and adequacy "tend to merge"). Second, Plaintiffs vigorously prosecuted this case through his legal counsel, including by litigating a pair of motions to dismiss, conducting factual investigations of the data breach, and participating in an adversarial mediation. Therefore, the class has been adequately represented at all times.

### B. Rule 23(b)(3) is also satisfied.

"Rule 23(b)(3) has two elements: (1) predominance and (2) superiority." *Nuwer v. FCA U.S. LLC*, 343 F.R.D. 638, 652 (S.D. Fla. 2022). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Both elements are satisfied here.

### 1. Common questions predominate.

Predominance is satisfied because "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 419 (N.D. Ga. 2017) (quoting *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009)). If "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (quotation omitted).

Here, predominance is satisfied because "Plaintiffs' case for liability depends, first and foremost, on whether [Defendant] used reasonable data security to protect Plaintiffs' personal information." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 312. As a result, "the focus" of this case is "on the extent and sufficiency of the specific security measures that [Defendant] employed," which presents "the precise type of predominant question that makes class-wide adjudication worthwhile." *Id.* Therefore, predominance is satisfied. *See In re Yahoo!,* 2020 U.S. Dist. LEXIS 129939, *37–38 (applying same reasoning as *Anthem*); *Sung*, 2018 U.S. Dist. LEXIS 40379, *11 (finding

19

predominance because "[a]ll claims arise from one data breach, and liability can be determined on a class-wide basis").

### 2.    A class action is superior to individual adjudication.

Superiority is satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "The inquiry focuses 'not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 319 (M.D. Fla. 2018) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004)). The following factors are relevant to superiority: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (holding that courts need not consider manageability in the context of settlement class actions).

In data breach cases, individual damages tend to be small, and litigation costs tend to be expensive. *See In re Yahoo!*, 2020 U.S. Dist. LEXIS 129939, *40 ("[T]he amount at stake for individual Settlement Class Members is too small to bear the risks and costs of litigating a separate action. Litigation

costs would be quite high, given that the case involves complex technical issues and requires substantial expert testimony."); *see Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication"). Moreover, even if class members were to pursue their claims individually, the efficiency gained by having a single resolution of all the common issues dwarfs any benefit of allowing more than 12,000 individuals to pursue their own cases.

The Agreement provides Settlement Class Members with certain relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member to object to it or to request exclusion. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action.

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings.

Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620. Therefore, the Court should certify the Settlement Class under Rule 23(b)(3).

## III. The notice plan complied with due process.

In the context of a class action settlement, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) (requiring same for due process); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) (holding that notice may be sufficient even if some class members do not receive actual notice). Here, Simpluris has successfully implemented the court-approved notice plan. *See* Marra Decl. at ¶¶ 5–14. In total, 99.37% of class members receive direct notice, including every person for whom an email or physical address was available. *Id.* at ¶ 12. Therefore, the class received robust notice, consistent with the requirements of due process. *See Begley v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 236601, *8 (N.D. Fla. Nov. 22, 2017) (holding "that the notice was reasonable, adequate, and the best practicable under the circumstances" where "[t]he Settlement Administrator has now represented that notice was provided in accordance with the approved plan to over 99% of settlement class members").

22

## CONCLUSION

The Court should grant Plaintiff's Unopposed Motion for Final Approval.


Dated: March 5, 2025                    Respectfully submitted,

                                        By: /s/ *Jared W. Connors*

                                        Matthew R. Wilson (871480)
                                        Jared W. Connors (*pro hac vice*)
                                        MEYER WILSON CO., LPA
                                        305 W. Nationwide Blvd.
                                        Columbus, OH 43215
                                        Telephone: (614) 224-6000
                                        Facsimile: (614) 224-6066
                                        jconnors@meyerwilson.com

                                        Raina Borrelli (*pro hac vice*)
                                        Sam Strauss (*pro hac vice*)
                                        STRAUSS BORRELLI PLLC
                                        980 N. Michigan Ave, Suite 1610
                                        Chicago, IL 60611
                                        (872) 263-1100
                                        raina@straussborrelli.com
                                        sam@straussborrelli.com


                                        *Counsel for Plaintiff and the Proposed
                                        Class*

**CERTIFICATE OF SERVICE**

I certify that on March 5, 2025 the foregoing was filed using the Court's CM/ECF system and will therefore be electronically served on all counsel of record.

/s/ *Jared W. Connors*
Jared W. Connors

**CERTIFICATE OF COMPLIANCE WITH L.R. 5.1(B)**

I certify that the foregoing document was prepared in 13-point Century Schoolbook in compliance with Local Rule 5.1(B).

/s/ *Jared W. Connors*
Jared W. Connors